The opinion of the Court was delivered by
Kennedy, J.
This is an action of assumpsit: the declaration contains four counts : the first three are special, setting forth a special agreement between the parties, alleging an observance and fulfilment thereof by the plaintiff, and a breach of the same on the part of the defendant: the fourth count is in indebitatus assumpsit for money had and received.
The counsel of the defendant below, the plaintiff in error here, submitted five points to the judge of the District Court, upon which the latter was requested to instruct the jury in favour of the defendant. His Honour, however, charged the jury, that there was nothing in the points submitted, to prevent the plaintiff from sustaining the present form of action; and that he might recover in it. His Honour also advised the jury, that if they found for the plaintiff, they ought to give the value of the property which the defendant had failed or refused to convey to the -plaintiff, and in addition thereto might include in their verdict the necessary expenses of the latter, if they should think it reasonable to do so.
The errors assigned are, first, that the judge erred in instructing the jury as he did, on the defendant’s five points. And, second, that the judge erred in directing the jury, that if they should find a verdict for the plaintiff, they might if they should think it reasonable, add the necessary expenses of the plaintiff to the value of the property *which the defendant had refused to to his
The counsel, for the plaintiff in error, by his first point, requested the judge of the Court below to charge the jury, “ that the parol agreement of the 28th of February, 1828, was merged and extinguished by the deed of conveyance from the defendant to the plaintiff, of the 22d of March, 1828.” Although the acceptance of a deed in pursuance of articles of agreement may be deemed prima facie an execution of the contract, and an extinguishment of it, so that no action can be maintained for a breach of any of the covenants or promises therein contained, Houghtaling v. Lewis, (10 Johns. 297); Steitzinger v. Weaver, (1 Rawle, 377); Haggerty v. Fagen, (2 Penn. Rep. 533),* yet it would, as it appears here, have been clearly wrong to have charged the jury as requested: for evidence had been given to the jury, tending to repel the presumption arising from the execution and acceptance of the deed, going, in short, to show, that the defendant below had fraudulently induced the plaintiff there to accept of the deed, by making him believe that it conveyed all the land embraced by the agreement of the 28th of February, when in fact one acre one hundred and four perches of it had been purposely *325 struck off and left out by the defendant. The evidence, too, tended strongly to prove that it was done with a fraudulent design on the part of the defendant below, from the manner in which it was effected: because it is perfectly manifest, from the terms of the agreement of the 28th of February, 1828, that he agreed to sell and convey to the plaintiff below, all the land which he had previously purchased of Mr. Priestman, supposed to contain seventy-two acres, one line of which had not then been closed; and for which, as appears from other evidence given on the' trial, the defendant below had not then obtained a deed of conveyance from Priestman. The agreement describes it as “a small tract of land on Timber Creek, and purchased from Mr. Priestman, supposed to contain seventy-two acres more or less, but one of the lines is not yet closedthus showing that it was not a part, but the whole of the tract purchased of Priestman, that was to be conveyed by the defendant below to the plaintiff. The mention that is made of one of the lines of the tract not being then closed, has a reference, as it must be understood, to the contract between the defendant below and Priestman, and not to any understanding between the parties here, further than that, whatever should ultimately be fixed on as the boundary of the purchase from Priestman, should govern between them. The suggestion, therefore, of the counsel for the plaintiff in error, that the mention of one of the lines of the tract not being closed, goes to show that the agreement between the parties only embraced a part of the land purchased by the defendant below from Priestman, is entitled to no weight, and has no such tendency whatever. The circumstance, then, of the defendant below going, a^er *he agree(l t° sell to the plaintiff the land which he of Priestman, without the or knowledge of the plaintiff, and getting the land divided by an artist into two parcels, one containing about seventy-one acres, and the other, the one acre and one hundred and four perches here in dispute ; and then procuring Priestman to make him a separate deed of conveyance for each parcel, so that he might exhibit, as it would seem he did, the deed of conveyance for the larger part to Dean, the plaintiff below, as evidence of Ms whole purchase from Priestman; concealing from Dean the fact of his having got one acre one hundred and four perches cut off from the tract which he had purchased of Priestman, and his having obtained a separate deed of conveyance for it. This, as it appears from the evidence, the defendant did; and no doubt, it was sufficient to satisfy the jury, that it was done for the purpose of deceiving the plaintiff below, and making him believe, as doubtless he did, that when he accepted of the deed of conveyance made to himself, from the defendant below, accompanied by a deed of conveyance also from *326 Priestman to the defendant for precisely the same land,' he was getting a deed of conveyance for all the tract purchased by the defendant of Priestman; and under this impression the plaintiff below received the deed to himself, believing that the defendant, in making it, had fulfilled his agreement of the 28th of February, 1828. If it be, then, that the defendant below thus unfairly induced the plaintiff to accept of the deed of conveyance made to him for part only of the land, leaving out the one acre one hundred and four perches of it, under a full conviction that it embraced the whole tract purchased of Priestman, it was not such an acceptance of the deed, as was binding upon the plaintiff below, and would amount to a perfect execution of the previous agreement of the 28th of February; nor yet to such a fulfilment of it by the defendant, as would preclude the plaintiff from maintaining his action of assumpsit against the defendant for the nonperformance of it. Even a written discharge, drawn up with all the formality imaginable, fraudulently obtained, would not have availed. It would be regarded as a nullity; for no one shall be permitted to gain any advantage, especially by his own fraud, and seldom, perhaps, if ever, even by the fraud of another.
By the second point, the judge below was requested to instruct the jury “ That the plaintiff had waived any claim on the defendant in this form of action, by a voluntary payment of the consideration money as stated in the declaration.” It would have been erroneous in the judge to have done so; because it was proper, and indeed requisite, before the plaintiff below could demand of the defendant a performance of his part of the agreement, and sustain an action of assumpsit, such as the present, against him for a breach of it, that he should have performed his part of the agreement, by having given his bonds and mortgage, securing the of the in the manner therein mentioned, or at least by *having tendered them to the defendant. This to enable the to maintain the present action, it was therefore altogether proper that he should aver it in his declaration. But why the payment of the consideration-money for the land agreed to be sold, as set forth in the declaration, is called voluntary by the counsel for the plaintiff in error, I do not very well comprehend; because the plaintiff below having given his bonds for it, in pursuance of his agreement made with the defendant, was under a legal obligation at least to pay it. If, however, it te meant, that he might have set up as a defence against the payment of the purchase-money, the non-fulfilment of the agreement of the 28th of February, by the defendant below, but not having done so, he is now precluded from either claiming a performance thereof specifically or damages as a remuneration for the loss arising from *327 the non-performance, it is a proposition so contrary to all reason as well as justice, that it cannot be sustained for a moment. Can it be pretended, that if the plaintiff below had given his bonds and mortgage, in conformity to the agreement, securing the payment of the purchase-money, and paid them off as they fell due, without having obtained a deed of conveyance from the defendant for any portion of the land, the defendant would not still be bound by his agreement to make the deed, and if he refused, be liable to be sued thereon for a breach of it ? It is scarcely possible for any one to doubt of his liability in such case ; and yet if the deed of conveyance made in this case was fraudulently imposed upon the plaintiff below as a deed of conveyance for all the land purchased by the defendant of Priest-man, when in truth it is only for a part, it is in principle not merely the same, but a much stronger case against the defendant, by reason of the fraud practised by him, which precludes the implication of any agreement in his favour that otherwise possibly might have arisen from the acceptance of the deed, and renders the acceptance of it of no avail to him whatever, in respect to the land excluded from it, which is embraced in the original agreement. It cannot be doubted, but a fraudulent performance by the defendant below, as against him, may be treated as a nullity, excepting so far as it is available and advantageous to the plaintiff.
By the third point, the judge below was requested to charge the jury “ That the plaintiff could not recover the claim laid in his declaration, in this form of action.” In support of this, it has been contended, that if the plaintiff be entitled to recover in any wise from the defendant below, it must either be in case for a deceit, or otherwise by action of covenant upon the deed made by the defendant. There is, however, not the slightest ground for this argument. Because the claim of the plaintiff is not for or on account of any objection that he has to the land, or the title received for it, that is actually embraced within the deed of conveyance made by the *defendant, but for other land that ought to have been included in it, which was fraudulently excluded by him; and therefore, it is utterly impossible, that the deed can furnish any security or ground of action for redress to the plaintiff, that would enable him to recover the claim made here. And although the land for which the plaintiff below has recovered damages in this action, was excluded from the deed of conveyance by the fraud of the defendant, yet it is inconceivable how that would impose any necessity on the plaintiff of resorting to an action on the case, in the nature of deceit for redress; seeing it has been shown already, that the very circumstance of the deed’s having been imposed
*328 fraudulently upon him by the defendant below, left the plaintiff at full liberty to treat it as no performance whatever of the original agreement, for that portion, at least, of the land in contest, and left out of the deed of conveyance. To determine otherwise, would be to permit the defendant to take advantage of his own fraud, and to give to it the .effect of extinguishing the original agreement, which nothing short of a new agreement being subsequently made between the parties, or an honest execution of the original one could produce.
The judge, by the fourth point, was requested to direct the jury, “ That the plaintiff could not recover, because the matter complained of would have been discovered by him before he concluded the bargain but for gross carelessness, negligence, or inattention.” The judge, we think, was perfectly right in refusing to give this direction. Without admitting, in the slightest degree, that the party in such case, where a fraud has been practised upon him, would forfeit his right to redress for such carelessness or negligence as is mentioned on this point, even if it existed, I can see no reason or evidence in the ease, which induces me to believe that it did exist, or that there is the least ground for saying so. On the contrary, it appeare to me that the device or contrivance resorted to by the defendant below, of getting the land divided, without the knowledge of the plaintiff, into two distinct parcels, then obtaining a separate deed for each parcel from Mr. Priestman, and conveying the larger parcel alone to the plaintiff as the whole of the tract purchased by the defendant of Priestman, and delivering to the plaintiff, at the same time, as evidence of the truth of that fact, the corresponding deed from Priestman to himself, is such as but few of the most wary and cunning rogues would have been likely to have detected at the time; aud much less certainly, would an honest and unsuspecting mind have been likely to have done so. I cannot avoid thinking it an artifice, supposing it to'have been one, that was most admirably calculated to deceive, and such almost as no honest man would ever have thought of, or even suspected; but still I do not wish to be understood, as saying that it might not have been conceived for an honest purpose; from the circumstances, however connected with it, by the evidence in this case, I think it rested with the defendant *below to have satisfied the jury that it was so; but it would seem from their verdict that-he failed to do that.
By the fifth point, the judge was requested to instruct the jury “ That assumpsit would not lie to recover back money paid for land, if conveyed by deed and warranty, the remedy being upon the warranty.” It is perfectly manifest that this point does not arise in the cause, and therefore, has no application to, *329 or bearing upon it whatever. Eor so far as this action can be said, under any point of view, to be brought to recover back money for land, it is certainly not for land that has been conveyed by deed from the defendant to the plaintiff below, but for land which the former ought to have conveyed by his deed to the latter, in compliance with his engagement, but has refused. There is, therefore, no ground for saying, that the original agreement between the parties, is merged by the deed, as to the land in question, and that this action for a breach of that agreement cannot be sustained; or that the plaintiff, on account of the fraud practised by the defendant, should not be at liberty to' consider the original agreement annulled thereby as to the land in question, and therefore, recover back the money for it on the count for money had and received.
The remaining error, is to the charge of the judge, in advising the jury “ That they might include in their verdict the necessary expenses of the plaintiff, if they deemed it reasonable to do so.” If any doubt existed in the mind of the counsel for the defendant below, in regard to the nature of the expenses actually embraced, or intended to be embraced, within the terms “ necessary expenses,” at the time his Honor used them, in his advice to the jury, an explanation might have been required; and doubtless it would have .been given, so as to remove the ambiguity if there be any, which is made part of the complaint now. But as this was not done, we may fairly take it, that the ordinary expenses attending the investigation of-the title, in order to ascertain whether it was good or not and free from all such incumbrances as might in any way or event affect it, were all that were intended or understood to be included. The amount of such expenses a defendant ought to pay, even in a case where he has acted honestly; believing, for instance, at the time, that he had a good title to the land which he agreed to sell and convey to the plaintiff, but happened to be mistaken in regard to it, and discovered afterwards, that he could not do so. This seems to be reasonable, because it must be admitted that he has been the cause of the loss occurring to the plaintiff, from the expenses incurred in the investigation of the title; and as' between two innocent persons generally, where one occasions a loss or injury to the other, it ought to fall upon him who has been the occasion of it.
The decisions for the most part, on this point, I believe, have been made in conformity to this principle. See Flureau v. Thornhill, (2 *Bl. Rep. 1078); Richards v. Barton, (1 Esp. Ca. 288); Sugden on Vend. 222, (7th Lond. ed.); Bratt v. Bilis, and Jones v. Dyke, in the Appendix thereto, Nos. *330 7 and 8. In the last case here referred to, the expenses allowed, amounting to nearly £261, consisted of the following items:
Costs of the plaintiff’s solicitor ¿£47 19 04
Costs of trustees in about 30 00 00
Interest on ¿£978, the amount of the purchase-money agreed to be paid, while it lay unemployed, ready to be appropriated by the vendee to the fulfilment of his purchase, from April 1804, to April 1807 146 05 00
Journeys to London and Llandilo, about twenty days horse hire and travelling expenses 21 00 00
Journey to London 15 15 00
¿£260 19 04
In the case, however, before us, the defendant below having it in his power to make a title for the land to the plaintiff, aecording'to his agreement, fraudulently refused, as would appear from the finding of the jury, and therefore has not even the shadow of either equity or law, to be exempt from paying the necessary expenses, to which the plaintiff was subjected on account of the confidence induced by the defendant’s engagement. In such case, when the contract is fairly made, it is nothing more thani just that the plaintiff, when he has paid all the purchase-money, as here, should recover in damages, the highest value of the property, without regard to the price paid for it; for had the defendant fulfilled his engagement, as he was bound to do, the plaintiff would have been the owner of the land, but through the fraudulent ’ refusal of the defendant to do so, the plaintiff may very properly be said to have been deprived of it; and therefore, can only be made whole, when he seeks to be redressed in an action for damages, by the jury’s giving an amount equal to the full value of the land, according to the highest estimate put on by the evidence, without regard to the amount of the price paid for it. This would seem to be' the principle, too, upon which courts entertain bills for, and decree thereon a specific performance of such contracts; so that the vendee by obtaining the estate itself, may be made perfectly sure of getting the full value and benefit of his bargain. And accordingly in this state, for want of a court of equity to enforce a specific performance, a jury, in an action brought at law in affirmance of the contract, will give damages to the plaintiff, equal fully in amount to the fancied value of the estate, and the expenses necessarily incurred by the plaintiff in consequence of his pur *331 chase, with the offer of an alternative to *the defendant, that he shall be released from the payment of the amount of damages so given, excepting so much thereof as shall be mentioned in the verdict, to cover the expenses of the plaintiff, upon the defendant’s making a title to the plaintiff for the estate, within a limited time, besides paying the costs of the action, and’ that portion of the damages allowed to cover the expenses. So at law in England in Brig’s case, (Pasch. T. 21 Jac. 1; Palm. Rep. 364,) it was ruled by the King’s Bench, that a purchaser was entitled to recover damages from the seller for the loss of Ms bargain, when the seller having it in his power, refused to comply with his agreement. In Flureau v. Thornhill, (2 Bl. Rep. 1078,) the same principle is implicitly recognized by Be Grey, Chief Justice, who in delivering his opinion, says, “Upon a contract for a purchase, if the title proves bad, and the vendor without fraud is incapable of making a good one, I do not think that the purchaser can be entitled to any damages for the fancied goodness of the bargain, which he supposes he has lost.” Thus indicating most clearly, if the vendor has either wilfully refused, or fraudulently rendered himself incapable of making a good title when he was capable of doing so, according to the tenor of his contract, that the purchaser would be entitled to recover damages for the fancied goodness of the bargain, which he lost by the knavery of the vendor. And in Hopkins v. Grazebrook, (6 Barn. & Cress. 31; s. c. 13 Eng. Com. Law Rep. 100,) where a person who had contracted for the purchase of an estate, but had not obtained a conveyance, put up the estate for sale in lots by auction, and engaged to make a good title by a certain day, which he was unable to do, as his vendor never made a conveyance to him ; it was held that the purchaser of certain lots at the auction, might, in an action for not making a good title, not only recover the expenses which he had incurred, but also damages for the loss which he sustained by not having the contract carried into effect. This Court seemed to think the defendant was justly liable to pay, because he knew when he offered the lots for sale and bound himself to make a good title, that he had no title whatever ; and therefore wilfully misled the plaintiff; and hence he ought to be hold responsible to the plaintiff for the loss sustained in not obtaining what the latter contracted for.
It has also been contended, supposing that the plaintiff is entitled to recover for the non-conveyance of the on'e acre one hundred and four perches, that he ought only to recover back such proportion of the whole purchase-money paid by him, as. the one acre one hundred and four perches bears to the whole quantity of land paid for. This, however, even in a case untainted with fraud, has neither reason nor authority to support it, as is very clearly shown by Chief Justice Kent, in Phelps v. Morris, (5 Johns. Rep. 56). There it was held, in an action for a breach of covenant of seisin, where there was a want of title only as to part of the land conveyed, that the *damages ought to be to the measure of value between the land lost and the land preserved, and not according to the number of acres lost and the number preserved. He also puts a case, which illustrates the justice of the rule very forcibly. “ Suppose,” says he, “a valuable stream of water, with expensive improvements upon it, with ten acres of adjoining barren land, was sold for $10,000; and it should afterwards appear, that the title to the stream with the improvements on it failed, but remained good as to the residue of the land, would it not be unjust that the grantee should be limited in damages, under his covenants, to an apportionment according to the number of acres lost, when the sole inducement was defeated, and the whole value of the purchase had failed ? So, on the other hand, if only the title to the nine barren acres failed, the vendor would feel the weight of extreme injustice, if he was obliged to refund nine-tenths of the consideration-money.” Accordingly, the same rule was adopted by the Supreme Court of New Hampshire in Ela v. Card, (2 New Hamp. Rep. 175,) where it was determined, that when a covenant of seisin is broken only as to part of the land conveyed, the relative value of that part compared with the consideration paid for the whole, furnishes the rule of damages. — The judgment is affirmed.
Judgment affirmed.
Cited by Counsel, 2 Watts & Sergeant, 550; 5 Barr, 406 ; 6 Id. 130; 1 Jones, 167; 6 Harris, 201; 4 Casey, 415 ; 10 Id. 322; 11 Id. 27.
Cited by the Court, 9 Watts, 270; 4 Casey, 134; 10 Id. 428.
Cited by Woodward, J., dissenting, 1 Grant, 137.
See 9 Watts, 572.

 See 5 'Wharton,'459.