## C. S. TYSON ET AL. v. J. R. EYRICK.

APPEAL BY PLAINTIFFS FROM THE COURT OF COMMON PLEAS OF CHESTER COUNTY.

Argued February 10, 1891—Decided April 6, 1891.
[To be reported.]

(*a*) By a parol contract, the plaintiffs sold to the defendant a lot of ground to have a frontage of fifty feet. Several weeks after the making of the contract, the plaintiffs' agent, at the request and in the presence of the defendant, staked off the lot sold, and marked the boundaries thereof upon the ground:

1. The sale and the subsequent designation of boundaries, although distinct in time, were component parts of the contract, and the contract

Statement of Facts.

having been so far performed as to be taken out of the operation of the statute of frauds, the defendant had a right to insist upon a title in conformity therewith.

2. Wherefore, it appearing that the agent, by mistake, included in the lines marked by him one foot of ground belonging to a stranger, the defendant, in an action for purchase money, was entitled to recoup damages for the failure of title thereto, although the plaintiffs tendered to him and put on file a deed for the fifty feet to which they had title.

3. The measure of the right of recoupment, in such case, is the proportionate value of one foot of ground, to be computed upon the basis of the consideration of the contract; but no damages can be allowed for a misplacement of buildings in consequence of the mistake, it being the defendant's duty before making such improvements, to ascertain and know his lines.

(b) The defendant testified that the verbal agreement for the sale specified the depth of the lot to be conveyed as one hundred feet. In designating the boundaries, plaintiffs' agent marked off a lot ninety-five feet in depth. The land to the rear was owned by the plaintiffs. The deed which they tendered to defendant was for a lot ninety-five feet deep:

4. The defendant having accepted the agent's designation of boundaries, and having based thereon his claim for recoupment in connection with the side lines of the lot, he was bound by it as to the depth; and it was error to submit to the jury, as the basis of an additional claim for recoupment, his allegation as to the depth specified in the original agreement.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and WILLIAMS, JJ.

No. 212 July Term 1890, Sup. Ct.; court below, number and term not shown.

On May 6, 1889, Carroll S. Tyson and William H. Reeves, trustees, brought assumpsit against James R. Eyrick, to recover $4,000, with interest from November 22, 1888, alleged to be due from the defendant as a balance of purchase money upon a parol contract for the sale of a lot of ground in Phœnixville. The defendant pleaded non-assumpsit, payment and set-off. Afterwards, the plaintiffs put on file a deed from themselves to the defendant, for the lot alleged to have been sold to him.

At the second trial, on May 14, 1890, the following facts were shown:

The Phœnix Iron Company was the owner of a piece of ground in Phœnixville, fronting on the east side of Main street and bounded on the north by property of the Farmers & Mechanics' National Bank, on the east by other land of said iron

Statement of Facts.

company, and on the south by property of the estate of Thomas Shaffer, deceased. The legal title was vested in the plaintiffs, as trustees of the iron company.

On September 1, 1888, the defendant, having made application to William H. Reeves, one of the trustees, to purchase the said lot, and having been referred to Armory Coffin, the chief engineer of the company, concluded with him a contract for the purchase of the lot for $6,000 ; $500 to be paid in hand, $1,500 when the title papers were prepared, and the remaining $4,000 to be secured by bond and mortgage, payable in one year or sooner at the will of the purchaser. The contract was a verbal one, but Coffin at the time made a memorandum of the terms in his note book. The defendant on that day paid $500 on account of the purchase money. A map of the company's properties, kept in their office, showed a ten-foot alley in the rear of this lot, in continuation of a similar alley at the bank lot, the right to the use of which had been conveyed to the bank by the plaintiffs along with the latter lot. In the negotiations between the defendant and Coffin, that map was not produced or referred to.

The defendant testified that both Reeves and Coffin told him that the dimensions of the lot sold to him were 50 by 100 feet, and that it would not be sold to him except upon the stipulation that the building he proposed to erect should be constructed of brick. He testified, also, that he explained to them the character of the building he proposed to erect. These allegations were in part denied by Reeves and Coffin.

About six weeks after the making of the contract, the defendant, having taken possession of the lot and done some work thereon preparatory to the erection of a double brick house, requested Coffin to mark the boundaries and to designate the centre line, so that the partition wall of the building might be located. Coffin thereupon went upon the ground and proceeded to mark the lines in the defendant's presence. Upon measuring the frontage of the lot, he found that the distance between the bank's property line and the fence of the Shaffer lot was about 51 feet. This he was unable to understand, as the iron company's map of its properties represented the width of the lot in question to be only 50 feet. He supposed, however, that the plaintiffs had title to the entire 51

feet, and proposed to the defendant that the latter take the whole at a proportionate increase of price, but the defendant said he wanted only 50 feet, and left it to Coffin to locate the 50 feet to be sold.

Coffin located it so as to adjoin the line on which the Shaffer fence stood, leaving the surplus strip of one foot, to be excluded from the sale, on the side next to the bank property, and located and marked the centre line of the 50 feet accordingly. In measuring the depth of the lot, Coffin measured off a distance of 100 feet from Main street, and then, seeing that this distance would carry the lot past the end of the bank lot, came back five feet, and marked the rear line of the defendant's lot 95 feet from Main street.

The defendant then proceeded to erect his building. His plan was to occupy 44 feet with the double building, leaving at each side of the lot a passage way three feet in width, as a means of access from the street to the rear; and his foundation walls were located in accordance with this design. After the building had been commenced, it was discovered that the Shaffer lot extended one foot north of the fence above mentioned, and that the plaintiffs had title to only 49 feet of the ground staked off by Coffin as sold to the defendant. At this time, the foundation walls had been built. The plaintiffs endeavored to purchase the one foot of ground from the executors of Shaffer, but were unable to do so. Testimony on their behalf tended to show that they then proposed to the defendant that they would convey to him the 50 feet to which they had title, and at their expense would move his foundation walls one foot to the north, but he said he could not wait to have this done and went on with his building. The defendant denied that any offer to move the walls was made.

On November 22, 1888, the defendant paid $1,500 on the contract to the plaintiffs; and on January 21, 1889, tendered to the plaintiffs the remaining $4,000 of the purchase money, accompanying the tender with a demand for a deed conveying the lot as staked off by Coffin. The tender was refused on account of the condition attached.

Various efforts were made to effect an adjustment of the difficulty arising out of the mistake that had been made respecting the Shaffer line. At one time the plaintiffs offered

Charge of Court below.

the defendant, as a compromise, a deed embracing the right to the alley in the rear. He declined the offer and insisted that he was entitled by his contract to a conveyance of a lot with a frontage of 50 feet and bounded at the sides by the lines which had been marked by Coffin, and that if title were not conveyed to him accordingly, he would be greatly damaged by reason of the want of an alley of the contemplated width on the southern side of his building. On April 23, 1889, the plaintiffs tendered to the defendant the deed afterwards put on file in this case, and demanded payment or security for the balance of purchase money. That deed described the property conveyed thereby as having a frontage of 50 feet and a depth of 95 feet, and as bounded on the north by the bank lot and on the south by the Shaffer lot. The defendant refused to accept the deed, or to pay or secure the balance of purchase money.

The testimony being closed, the court WADDELL, P. J., charged the jury in part as follows:

The plaintiffs, here, ask at your hands a verdict for $4,000, with interest from such a time as in your judgment they were able to convey to him, or agreed to convey to him, what they were able to convey; while, on the other hand, the defendant says he is entitled to have taken off of the $4,000 whatever in your judgment may have been the injury resulting to him by reason of this error on the part of the plaintiffs.

The case, as we view it, thus presents three questions for your consideration: [First, did the plaintiffs sell to the defendant a lot on Main street, 50 feet in front and 100 feet in depth; if so, have they refused to convey such lot, and has the defendant been damaged thereby?] [5] [Second, did the plaintiffs, through their agent, induce the defendant to mislocate his building whereby he was injured, and if he was so injured by the act of the plaintiffs, what is the standard whereby his damages are to be measured?] [2] And, third, if the defendant has been damaged by the refusal of the plaintiffs to convey a lot 100 feet in depth, or because they caused him to misplace his building, can these damages be deducted from the balance of the purchase money still due?

Did the plaintiffs sell to the defendant a lot 50 feet in front and 100 feet in depth? . . . .

Charge of Court below.

[You will see, the parties to the contract, who should be able to give us the terms of it, disagree on the point as to the depth of the lot, one asserting the depth was fixed at 100 feet, while the other says nothing was said on the subject. It will be your duty to reconcile their testimony, if you can. You must determine from their testimony, and the other testimony in the cause, whether the plaintiffs agreed to convey to the defendant a lot 100 feet deep, bearing in mind that it is incumbent upon the defendant to satisfy you this was a part of the agreement.] [5] If you are unable to say which of these gentlemen can tell you what actually took place, you may call to your aid the probabilities of the case. . . . . If you are in doubt, however; that is, if you are unable to say whether the plaintiffs stipulated to sell a lot 100 feet in depth, you must find this branch of the case against the defendant, because it is his duty to establish this fact to your satisfaction.

If, however, you conclude that these plaintiffs agreed to sell this defendant a lot 100 feet in depth, then you must inquire whether they have refused to convey him such a lot. There can be little doubt upon this point. All the deeds prepared and tendered, I think, call for a lot only 95 feet in depth. [If they did agree to sell him such a lot, and have refused to convey it to him, has he been damaged by this refusal? If he has, you must ascertain, as well as you can from the testimony, the extent of this damage; you must ascertain what inconvenience he suffers with a 95-feet lot, and determine whether it would be removed by a 100-feet lot. He is entitled to be compensated for whatever damages he may have suffered by this default of the plaintiffs, if you determine they are in default, and their default will depend upon whether or not they agreed to sell him a lot 50 feet in front by 100 feet in depth.] [5]

The next inquiry, gentlemen, demanding your consideration is, did the plaintiffs, through their agent, induce the defendant to mislocate his building? Very little question, if any, can be made about this. Mr. Coffin staked off the ground, marked the centre line of the building, and the excavation for the cellar was changed to comply with the measurements of Mr. Coffin. The walls were erected according to them. At this point it was discovered that a mistake had been made in these measurements and the building had been located one foot too far south. Was

Charge of Court below.

this a mistake made by the agent of these plaintiffs? Had this defendant anything to do with the location of this building? His architect did locate it, but this location was changed to correspond with the lines given by Mr. Coffin. [Has the defendant been injured by this mistake? He proceeded to locate his building in the centre of the lot, so as to have a three-feet alley on each side; the lot was to be 50 feet in front, the building was to be 44 feet in front, thus allowing him six feet to be used for the two alleys, or, in other words, give him three feet for each. As the true lines were subsequently ascertained to be, he has four feet of an alley on the north and one of two feet on the south, or nine inches, according to what may be held to be the true line between this lot and the Shaffer property. The line, as conceded by Mr. Coffin, would make this alley two feet; as claimed by Mr. Shaffer it would make it only nine inches. Mr. Eyrick claims that a two-feet alley will not give him the proper access to the rear of his property and will materially affect his enjoyment of the buildings. Has he, in your judgment, as shown by the testimony, been injured by the mistake referred to? If so, how is this injury to be measured?] [2]

This will depend upon the point of time when they are to be measured. The plaintiffs contend that they must be measured as of the time when the mistake was discovered, while the defendant says the proper measure of damages is the difference in the market value of the property with a three-feet alley on the south and the absence of such an alley. We say to you that in our opinion the true standard is, what would it have cost to correct the mistake at the time it was discovered and notice was given to this defendant, if it could have been then corrected? It was the duty of the defendant, when he discovered that this error existed, to stop and determine what it was proper to do. All that he did after that he did at his own peril. . . . .

When did the defendant discover this mistake? Mr. Coffin tells you that on the tenth day of November he discovered it; that his attention had been directed to it prior to that date by Mr. Ellis, that he had looked into it and satisfied his mind that it was probably so, and that the way to correct this error was to endeavor to purchase this extra foot from the Shaffer estate. He tells you that on the tenth of November he wrote a letter

Charge of Court below.

to the trustees of the Shaffer estate, with the permission of the gentlemen whom he represented, requesting to purchase that foot of ground. After that, he says, Mr. Eyrick came down to his office to see what they proposed to do, and he told him they proposed to give him this remedy, if it was in their power, and showed him a copy of the letter which he had written to the Shaffer estate. Mr. Eyrick says that he discovered this error between the sixth and tenth of November. . . . .

All this occurs, as he admits, by the tenth of November. It was notice to him, therefore, and it was his duty, as we have said, either to stop his building at that time until this difficulty was adjusted, or, if he thought proper to go on and finish it, he did it at his own risk, and cannot ask these plaintiffs to compensate him for any injury that may have resulted to him after the date of this knowledge. At that time the building was in the condition of having the cellar walls up. There can be no question about that. . . . . You must determine, however, what condition the area was in on the tenth of November. No question can be made, it appears to the court, about the condition of the cellar of the building. Was it practicable to move these walls one foot farther north? If it was, then that should have been done, or some other remedy should have been adopted to correct the mistake referred to. . . . .

You must determine as well as you can from the testimony, what it would have cost, on the tenth of November, 1888, to move these walls one foot farther north, if it was practicable to do so and that would have corrected the mistake which had been made. [You will, therefore, gentlemen, consider all the testimony bearing upon this point, and ascertain what in your judgment would be a fair compensation to this defendant, on the tenth day of November, for the injury which he has sustained, if he sustained any, by the misplacement of his building.] [2]

We have thus disposed of the first and second questions presented for your consideration. The third is, if the defendant has been damaged by the refusal of the plaintiff to convey a lot 100 feet in depth, or, if he has been damaged because they induced him to misplace his building, can these damages which you find, if you do so find, be deducted from the balance of the purchase money still due? This is altogether a question

of law, and we say to you that if you find that the plaintiffs agreed to convey to the defendant a lot of ground 100 feet in depth and they failed to do so, and the defendant has been injured thereby, or, if you find that the defendant has been injured because he was induced by the plaintiffs to misplace his building, you must ascertain what will compensate the defendant for these injuries, or either of them, and having ascertained this amount you are entitled to deduct that amount from the balance of the purchase money still due, four thousand dollars. You will thus ascertain what is due as a net principal to the plaintiffs. We do not see that any circumstances exist that would relieve the defendant from paying interest on the balance due the plaintiffs, as you shall find it.

I am requested by both of the parties, gentlemen, to present to you my views upon the law, so far as I have not already done so in my general charge.

The plaintiff asks me to say to you:

2. The plaintiffs' agent, in attempting, at the request of the defendant, to mark upon the ground the corners of the lot contracted to be sold, some six weeks after the contract was entered into, and before execution and delivery of the deed of conveyance therefor, was a mere volunteer; and if, in so doing, he made an honest mistake, such mistake will not render the plaintiffs liable to the defendant in damages for any real or conjectural depreciation in the value of the building erected, arising from its disadvantageous location upon the lot, even though such disadvantageous location was induced by such mistake. on the part of the plaintiffs' agent.

Answer: We say to you, gentlemen, that if we understand the point, the effect is, briefly, to ask the court to say that under the circumstances of the case the defendant is not entitled to deduct anything by reason of the acts of the plaintiffs. As we have already said to you, we cannot take that view of the law, and we must disaffirm the point.[1]

The defendant asks me to say:

1. If the jury believe from the evidence that the contract of sale was for a lot of ground on Main street 50 feet in front by 100 feet in depth, and that the down money was paid and possession given under that contract, and that the plaintiffs now refuse to deed and convey to the defendant a lot of land of

greater depth than 95 feet, then the defendant is entitled to deduct from the balance of the purchase money due a sufficient sum to compensate him for the sale of the said five feet.

Answer: That we affirm. That is true, as we have already explained it.[6]

2. If the jury believe from the evidence that the failure of the plaintiffs to convey the lot of 50 feet in front on Main street, as staked off by their chief engineer and of which possession was given to the defendant, has resulted in damage and loss to him, he, the defendant, is entitled to set off the amount of such loss and damage against the balance of the purchase money.

Answer: That we affirm. You will see, gentlemen, that these points are really recapitulations of the principles which we have already explained to you, and therefore they need no comment at this time.[3]

3. The defendant is entitled to deduct from the purchase money any loss or damage to his property arising directly from the failure of the plaintiffs to convey to him the lot of ground purchased and staked off.

Answer: I affirm that point, gentlemen, with the limitation that those damages will, so far as the building is concerned, be rated upon the condition of affairs on the tenth of November.[4]

—The jury returned a verdict for the plaintiffs for $3,375.38. A rule for a new trial having been discharged and judgment entered, the plaintiffs took this appeal, assigning for error:

1. The answer to plaintiffs' point.[1]
2. The parts of the charge embraced in [ ][2]
3, 4. The answers to defendant's points.[3] [4]
5. The parts of the charge embraced in [ ][5]
6. The answer to defendant's point.[6]

*Mr. John G. Johnson* and *Mr. R. T. Cornwell*, for the appellants:

1. The first four assignments of error raise the question whether the honest mistake of the plaintiffs' agent, made without negligence or taint of fraud, with every mark on the ground conducing to it, and having no bearing upon or inducement to the contract, can be relieved against in equity. It was no part of the contract between these parties that the defendant

should have possession of the lot before he got his title deed, and in entering into possession in advance of the conveyance he assumed all risks. There were no covenants, express or implied, as to the precise lines of the enclosure, and the mistake made in endeavoring to stake out the lot was corrected before delivery of the title and payment of the purchase money. It was not such a mistake as was a material ingredient in the contract, and it presents no ground for equitable interference: 1 Story Eq. J., §§ 141, 151; Miles v. Williamson, 24 Pa. 135.

2. Even if the conveyance had been made, the plaintiffs would not have been responsible beyond their covenants, there being no fraud: Noonan v. Lee, 2 Black 499; Patton v. Taylor, 7 How. 132; Rodgers v. Olshoffsky, 110 Pa. 147; Coughenour v. Stauft, 77 Pa. 191. In no event, can damages be recouped for improvements made on the lot. The measure of damages would be the purchase money paid for the portion of the land as to which the title failed: Addison on Cont., 1142; Lewis v. Campbell, 8 Taunt. 715; Worthington v. Warrington, 8 C. B. 134; 4 Kent's Com., *475; Bender v. Fromberger, 4 Dall. *436; Brown v. Dickerson, 12 Pa. 372; Cox v. Henry, 32 Pa. 18; Terry v. Drabenstadt, 68 Pa. 400; McClure v. Gamble, 27 Pa. 288; Beaupland v. McKeen, 28 Pa. 124; Kreiter v. Bomberger, 82 Pa. 62; Ottaway v. Ralph, 26 Pittsb. L. J. 123; Wacker v. Straub, 88 Pa. 32; Sausser v. Steinmetz, 88 Pa. 324; Crunkleton v. Wilson, 1 Brown 361; Lanigan v. Kille, 97 Pa. 120. The defendant has sustained no damage apart from the improvements made, and these he persistently refused to change, although they had not proceeded beyond the foundation walls.

3. Under the fifth and sixth assignments, we contend that there was nothing to submit to the jury as to the agreed depth of the lot, and nothing could be recouped from the plaintiff's claim as damages on that account. Even assuming that the lot was spoken of as 50 by 100 feet, it is undisputed that when it came to be measured and staked off, it was staked off to the depth of 95 feet; that the defendant accepted it with its boundaries so designated, and entered into possession and built upon it; that he never made any objection upon the ground of insufficient depth, and that, when he made his tender and afterwards, his only demand was for a deed conveying the lot staked

off to him.   This was conclusive of the matter, and the court erred in charging the jury that they might allow the defendant damages on this account, to be defalked from the plaintiffs' claim.

*Mr. H. H. Gilkyson,* for the appellee :

1. The only question raised by the assignments of error is whether the damages arising from the breach of a parol contract for the sale of land, can be set off in assumpsit for the unpaid purchase money.   It is conceded that the circumstances were such as to take this contract out of the operation of the statute of frauds.   It is admitted that the plaintiffs are unable to convey the lot as staked off by Mr. Coffin, and are unwilling to convey the additional depth of five feet claimed by the defendant.   Has he no remedy ?   The general rule in such cases is that the purchaser may, if he choose, have the contract specifically performed, so far as the vendor can perform it, and have abatement out of the purchase money, or compensation for any deficiency in the title, quantity, quality, description, or other matters touching the estate : 1 Story Eq. J., §779; Paton v. Rogers, 1 Ves. & B. 351; Hill v. Buckley, 17 Ves. 394 ; Ketchum v. Stout, 20 Ohio 453; Springle v. Shields, 17 Ala. 297.   An action for the purchase money is in effect a proceeding by the vendor for specific performance, and is governed by the same rules : Nicol v. Carr, 35 Pa. 381.   Would not a court of equity allow compensation to the defendant in a case like this ?

2. That the plaintiffs contracted to convey a lot, 50 by 100 feet, bounded at the sides by certain well defined lines, is settled by the verdict.   After the defendant had taken possession, the plaintiffs voluntarily interfered and established new lines. A loss to the defendant has occurred thereby, and it must be borne by the parties whose neglect was the occasion of it : Miller v. Browarsky, 130 Pa. 379.   The erection of this brick building, occupying 44 feet of the lot, was an essential part of the contract of sale; and one of the chief inducements moving the defendant to make the purchase was that the lot, according to the plaintiffs' representations, was suitable for the purpose. By the mistake of the plaintiffs' agent in locating the lines, the southern half of the building has been seriously damaged in value, as it is without access at the side or from the rear.   That

damage is a good defence pro tanto : Parcell v. Grosser, 109 Pa. 617. No claim is made to be recouped "for improvements made on the lot." The claim is not for the value of the improvements, but for damages to improvements by reason of the plaintiffs' mistake : Miles v. Williamson, 24 Pa. 135.

3. The agreement of sale, in this case, was an executory contract ; and the principles applicable to it are different from those which apply to an executed contract, closed by delivery of a deed : Kreiter v. Bomberger, 82 Pa. 59. Some of the later cases permit an equitable defence, even though the contract has been executed and a deed delivered : Goettel v. Sage, 117 Pa. 298. It is too late to urge now that it was no part of the contract that the defendant was to have possession. Possession was taken with the knowledge and consent of the vendors, and the improvements were erected in part performance of the agreement of sale. The possession was such as would have disabled the plaintiffs from conveying to any other person : Kine v. Balfe, 2 Ball & B. 174 ; Pugh v. Good, 3 W. & S. 61 ; Lord's App., 105 Pa. 451. The different deeds executed by the plaintiffs are evidence of their understanding of the terms of the contract : Hart v. Carroll, 85 Pa. 512. Those that preceded the execution of the one tendered to the defendant, described the lot with reference to a plot, and included the use of an alley which is omitted from the latter. A depth of 100 feet would give the defendant access to that alley.

OPINION, MR. JUSTICE CLARK :

This action was brought to recover the balance of purchase money upon a parol contract for the sale of a lot of ground fifty feet in front on Main street, in the borough of Phoenixville, the title to which is in the plaintiffs, as trustees for the Phoenix Iron Company. The contract was made with the defendant on the first day of September, 1888, through one Armory Coffin, the chief engineer of the company. The terms of the contract are stated in a memorandum contained in the chief engineer's note-book, as follows : "9—1, 88 ; Mr. James R. Eyrick agrees to take the 50-foot lot on Main street, south of Farmers and Mechanics' Bank, for the price of, $6,000 ; viz., $2,000 cash, and the balance on mortgage, payable at will ; $500 check, and $1,500 when papers are prepared." The hand

Opinion of the Court.

money was paid at the time to the treasurer of the company, and Mr. Eyrick shortly afterwards entered into the possession.

The company actually did have a lot fifty feet in front, situate as described, and if the matter had so remained there would probably have been no difficulty.   But when Coffin came, a month or more later at Eyrick's request, to measure and stake it off, he by mistake embraced a foot of ground on one side of the lot which did not belong to the company, and excluded a foot on the other side which did, and this gives rise to the whole controversy.   The plaintiffs tendered a deed for the fifty feet they own and can convey, but the defendant demands a conveyance of the fifty feet of ground that was staked off to him, assigning as a reason that otherwise he cannot have the convenient use of one of the buildings which he has since erected.   He alleges that, relying upon the location of the centre line of the lot by Coffin, he erected a three-story brick double dwelling, on each side of which he had designed a three-foot passageway, and that, by reason of the mistake, one passageway is but two feet wide, and is inconvenient and unsuitable for the purpose intended.

The sale and the subsequent designation of the boundaries, although distinct in time, were, we think, component parts of the contract, and Eyrick had a right to insist upon a title in conformity therewith.   The lot was staked off fifty feet in front, and ninety-five feet in depth.   Mr. Eyrick says, in speaking of this : " He (Coffin) measured back one hundred feet, and he looked across, and he said that it ran beyond the bank line, and he said it was one hundred feet, more or less, and he gave me five feet less."   The lot was staked off to the same depth as the bank lot ; it is not pretended that the lot was to extend farther back.   The complaint is that the officers of the company told him the lot was fifty by one hundred feet, but, when it was discovered upon actual measurement that it was only ninety-five feet in depth, Eyrick made no objection ; he accepted the lot according to the lines measured and staked off, and now insists that the conveyance shall be made accordingly. Nor was anything said, at or prior to this time, as to an alley in the rear.   If the measurement and designation of the front line of the lot is binding upon the parties, the designation of the line in the rear is equally binding, and we can see no ground

Opinion of the Court

for this feature of the controversy. It is true that a private map in the office of the Phœnix Iron Company shows an alley in the rear of this lot in question, but it does not appear that this or any other of the company's lots, excepting only the bank lot, was sold with reference to this plot, and we cannot see that the defendant has any claim to the alley, or to more ground than was actually staked off to him. If he has a right to hold the company to the side lines of the lot as staked off, he is certainly bound by the lines in the front and rear, marked off and designated at the same time. He cannot play fast and loose in this respect; his claim must be consistent. If he wanted the use of an alley in the rear, he should have bargained for it, and there is no evidence whatever of any understanding or agreement to that effect. On the contrary, it appears that when a deed was tendered as a compromise, containing a grant of the alley, Eyrick treated it as of little consequence, for the reason, as he says, that " a blind alley is a nuisance." It was not until much later, in their negotiations for settlement, that he asked them to extend the alley in an L shape to Jackson street. The court erred in submitting to the jury any question of damages as to a deficiency in the depth of the lot. There was no evidence to justify such a submission. This part of the defendant's claim is, in our opinion, wholly inconsistent with the only theory of the case upon which the defendant is entitled to anything by way of damages, and should have been excluded.

The case is therefore narrowed to a consideration of the proper measure according to which the defendant is entitled to recoup damages for failure of title as to the one foot on the south side of the lot. That the mistake was an honest one, that the plaintiffs acted throughout the transaction in good faith, is beyond question; there is no proof to any other effect. There is evidence, on the contrary, tending to show that they were willing and offered to do what they could to remedy the wrong which had been done to the defendant. Upon discovery of their mistake, they were prompt in their efforts to make amends; they tried to purchase one foot off the Shaffer lot, covering the interference; failing in this, they offered to convey the fifty feet they had title for, and to embrace the alley in the rear. There is evidence, also, that immediately after the

Opinion of the Court.

discovery of the mistake, and when they failed to get one foot off the Shaffer lot, they offered to move the walls of the building then under construction one foot nearer to the line of the bank lot, at their own expense; but this is denied. All this testimony, with that of a more direct character, bears upon the question of good faith; and, whilst there is much proof to this effect, there is none to the contrary.

We have, then, the parol sale of a lot, measured and marked on the ground as containing fifty feet front, and a failure of title to the extent of one foot; the failure resulting from an honest mistake as to the true boundary. What is the true measure of damages in such a case?

The law of Pennsylvania on this subject is certainly well settled. Where the contract is executed by deed, with covenants of general warranty of title, the rule undoubtedly is that the measure of damages for failure of title, in the absence of fraud is limited to the purchase money and interest, or, in other words, to the price of the land at the date of the deed, whether the consideration consist of services, land, or money: Bender v. Fromberger, 4 Dall. *436; Brown v. Dickerson, 12 Pa. 372; McClure v. Gamble, 27 Pa. 288; McClowry v. Croghan, 1 Gr. 311; Lanigan v. Kille, 97 Pa. 120. The rule is founded, in part, probably, in the ancient law of warranty, which gave to the party evicted a judgment against his vendor for lands of equal value to those conveyed: 2 Kent Com., 477. Interest is added to the amount of the consideration, unless the land is improved and the purchaser has been in the possession. In such case, the claim for interest is extinguished, except for that part of the time for which the purchaser is liable to mesne profits: Cox v. Henry, 32 Pa. 18; Patterson v. Stewart, 6 W. & S. 527; Wacker v. Straub, 88 Pa. 32.

In executory contracts, generally, the law recognizes and enforces the right of the purchaser to a title clear of defects and encumbrances, and this, except in particular cases, is not affected by the nature and extent of the covenants for title which the purchaser is to receive: Rawle on Cov., § 319. In McNair v. Compton, 35 Pa. 23, it was held that for breach, without fraud, of a real contract in writing, the measure of damages is to be determined by the consideration that passed between the parties: whether the contract be executed or executo-

Opinion of the Court.

ry, this is the rule. If the consideration consist of services rendered, they are to be computed according to their value; if money received, it is to be returned with interest. So, also, in Hertzog v. Hertzog, 34 Pa. 418, an action for the breach of a parol contract for the conveyance of land in consideration of money paid and services rendered, it was held, overruling Jack v. McKee, 9 Pa. 235, and kindred cases, that the damages are to be measured by the amount of the consideration, and not by the value of the land. To the same effect are Dumars v. Miller, 34 Pa. 319; Graham v. Graham, 34 Pa. 475; Bowser v. Cessna, 62 Pa. 148; and Burk v. Serrill, 80 Pa. 413. The damages cannot be measured either according to the value of the contract, or the increased value of the land by reason of buildings erected or improvements made. Where the eviction complained of is partial, the recovery is proportioned to the value of the part of the premises to which the title has failed. It is competent to show that the part to which the title has failed was inferior or superior in quality to the other portion conveyed, and the true measure of damages is the value of that part taken in proportion to the price of the whole, the computation being upon the basis of the consideration money: Lee v. Dean, 3 Wh. 331; King v. Pyle, 8 S. & R. 166; Beaupland v. McKeen, 28 Pa. 124; Terry v. Drabenstadt, 68 Pa. 400. In Beaupland v. McKeen, supra, the rule for estimating damages for failure or defect of title to a part of the land conveyed, was held to be the relative value which the part taken away bears to the whole, and that is to be estimated with regard to the price fixed by the parties for the whole land; and whilst, in such cases, it is competent for either party to give evidence of peculiar advantages or disadvantages of the part lost with reference to the whole, at the time of the purchase, it was held that the additional expense of erecting improvements on an adjoining tract, incurred by reason of the defect in the title, in order to have the reasonable and proper enjoyment of the remaining portion of the land, was not allowable as damages.

The defendant's contention is that he bought the ground which was staked off to him, and that he is entitled to a conveyance for the land he bought. The plaintiffs are not able to convey but forty-nine feet of the fifty they agreed to sell. Their inability arises out of no bad faith or fraud on their part; their

contract, for anything that appears, was made honestly, but through mistake as to the lines of their lot. The title to the specific subject of sale is to this extent defective. The defendant, upon discovery of this defect, made no offer to rescind; on the contrary, after he knew the plaintiffs were unable to comply with their contract, he continued to pay the purchase money and to proceed with his improvements. He is entitled, therefore, merely to an allowance for the proportionate value of the one foot of ground, to be computed upon the basis of the consideration of his contract. He cannot be allowed damages for the misplacement of his building; it was his duty, before expending his money upon valuable improvements, to ascertain and know his lines, and to locate his buildings accordingly. The Phœnix Iron Company, or its trustees, are responsible, upon the footing of their contract, for the title to the lot as it was when they sold it, to the extent of the purchase money; but the defendant, upon the principle of caveat emptor, took the risk of the title as to the improvements which he put upon it. If this were not so, the vendor in very many cases would be ruined by the purchaser's improvements. If it seem hard that a purchaser, acting in good faith, should lose his improvements, it is equally hard that a vendor, also acting in good faith, should have to pay for them: Rawle on Cov., §§ 166, 168.

We are of opinion that the first, second, fifth, and sixth assignments of error are sustained. This is the plaintiffs' appeal, and we dispose of it as it is presented upon the assignments of error; it can therefore only be regarded as authority upon the specific questions decided.

The judgment is reversed, and a venire facias de novo awarded.