————o————

No. 4423.

(Court of Appeal, Parish of Orleans.)

## S. H. MARCUSE VS. H. KRAMER.

1. When an attorney is engaged by several parties to act or advise in a transaction in which all are interested, communications made to him are not within the rule of privileged communications. He

may be called to testify by any of the parties in a subsequent suit between them as to such professional communications.

2. A party objecting to testimony, must, at the trial, state the particular grounds on which he resists its introduction. This Court will not look for nor consider any other objections than those specifically made in the trial Court and appearing of record, save such, of course as positive law or a rule of public policy requires to be noticed **ex propria motu.**

Appeal from Civil District Court, Division A.

Lazarus, Michel & Lazarus, for Plaintiff and Appellant.

B. R. Forman, for Defendant and Appellee.

MOORE, J. The sole question involved in this cause is whether an attorney at law, who is engaged by several parties to act for or to advise them in a transaction in which they are all interested, may be called on to testify by any one of the parties in a subsequent suit between them, concerning communications made by them to him.

The facts which suggest this inquiry are as follows:

Plaintiff had sued out and obtained a writ of attachment, on the statutory ground, against defendant, whereupon the latter moved to dissolve it on the ground that the affidavit was .false.

During the progress of the trial of this motion an agreement was entered into by the parties by which the testimony of Mr. Charles Rosen, an attorney at law, was to be taken out of Court; thereupon the further trial of the motion was suspended. Proceeding under this agreement to take the testimony of this witness at his office, he was interrogated by Counsel for plaintiff (defendant in rule), as follows:

Did you ever have any professional relations with these gentlemen (plaintiff and defendant) during the year 1905 with reference to certain woodwork business?

Replying in the affirmative, he was then asked: Q. "What relations * * * ?" To this counsel for defendant objected on the ground "that these relations were privileged, and not to be disclosed." The witness then interposed the following statement: "I want to say that I would be unwilling to testify unless both parties consented, on the ground that the communication was privileged."

He was then shown a paper and asked whether the contents thereof were communicated to Mr. Kramer (the defendant) be-

fore he signed it. To this counsel for defendant, Kramer, objected on the ground that the communications were privileged. Then the witness remarked: "Well, Mr. Lazarus, I don't know that the rule of law relative to privileged communications authorizes an attorney to object if the client does not object; but where the client does make the objection, I would be unwilling to testify, unless the Court ruled that the testimony was admissible—that is, to testify to any communications within the employment that I deem are privileged."

At this stage counsel representing both parties agreed to defer the further taking of testimony until the Court should have ruled on the objection.

Subsequently the witness appeared in open Court, and then the additional question was asked him: "Do you know of your individual knowledge whether or not Mr. Kramer and Mr. Samuel H. Marcuse are partners, or whether or not Mr. Kramer was an employee of Mr. Marcuse?"

To this question counsel for Kramer objected, but no particular ground or grounds of objection were stated. At any rate, no ruling on the objection was made by the trial judge at this time, and the witness replied as follows: "He has asked me, of my individual knowledge (*sic*). All the knowledge I have comes from my professional appointment by Mr. Marcuse and Mr. Kramer, and I would be unwilling to testify unless the parties themselves consented." Then several questions were asked the witness tending to show that his employment was a joint employment, to which the answers, made without objection, were that the witness was consulted by and acted for both with their mutual consent. Thereupon the question was repeated: "Do you know whether or not Mr. Marcuse and Mr. Kramer were partners, or whether or not Mr. Kramer was an employee?" To this counsel for defendant objected, no grounds being assigned therefor; the counsel simply saying, "I object." No ruling being then made, the witness answered: "My knowledge is through my capacity as attorney." The Court then asked the witness: "You felt yourself bound to help them both?" to which the witness replied: "Yes, sir; I felt I was representing both of them in their interests." Thereupon the Court ruled that the witness might not testify as his knowledge concerning the transactions of his employment "is privileged in the absence of consent of both parties."

To this ruling a bill of exception was reserved.

The judgment was in favor of the defendant in rule, and the attachment was dissolved. From this judgment the plaintiff appeals.

No inquiry can be gone into by us concerning the merits of the controversy on the rule to dissolve, unless it be first determined that the ruling of the judge *a qua* in refusing to allow the attorney of the parties to testify as to communications made by them to him is correct. If the ruling is error, the cause will, necessarily, have to be remanded. In our opinion, the ruling was error.

Article 2283 C. C., to the effect that "No attorney or counsellor at law shall give evidence of anything that has been confided to him by his client, without the consent of such client," but announces a well recognized rule of evidence which would be effective in this jurisdiction, even if it were lacking in legis lative affirmance. But communications made to an attorney who is engaged by several parties to act or to advise in a transaction in which all are interested, is not within the rule when, in a subsequent suit between the parties, he is called to testify by any one of them. Dr. Wharton, in his work on "Evidence," p. 587, says:

"It is easy to conceive of cases in which two or more persons address a lawyer as their common agent. So far as concerns strangers, their communications to the lawyer would be priviledged. It is otherwise, however, as to themselves; and they stand on the same footing as the lawyer, either could compel him to testify against the other as to their negotiations."

Underwood on Evidence, p. 171, says: "Where an attorney is engaged by several parties to act or advise in a transaction in which all are interested, communications made to him are not within the rule. He may be called to testify by any one of the parties in a subsequent suit between them as to such professional communications."

Weeks, on Attorney at Law, p. 175, says:

"175. Communications Made to Legal Adviser of Two Parties Jointly.—Two or more persons sometimes address a lawyer as a common agent. So far as concerns strangers, these communications are privileged, but not as between themselves. As they stand on the same footing as to the lawyer, either can compel him to testify against the other as to their negotiations.

1.   Wharton on Evidence, sec. 587; Shore vs. Bedford, 5 Man. & G., 271; Reynolds vs. Spyrye, 10 Beav. 51; Warde vs. Wards, 3 Macn. & G. 365; Earle vs. Grout, 46 Vt. 113; Hatton vs. Robinson, 14 Pick. 416; 25 Amer. Dec. 415; Rice vs. Rice, 14 B. Mon. 417."

And Wigmore on Evidence, Vol 4, p. 3235, says:

"2312.   Communications to Opponent or His Attorney or in Opponent's Presence; Joint Attorney.—There may be a relative, not an absolute, confidence.   The chief instance occurs when *the same attorney acts for two* parties having a common interest, and each party communicates with him.   Here the communications are clearly privileged from disclosure at the instance of a third person.   Yet they are not privileged in a controversy between the two original parties, inasmuch as the common interest and employment forbade concealment by either from the other.".

See also Algiers, etc., vs. Steen et al., No. 3993 of the docket of this Court.   In his oral argument at the bar of this Court, counsel for appellee suggested that even if the ruling of the trial judge in not permitting the witness to disclose the communications made to him by the respective parties is error, it is not reversible error, forasmuch as the facts sought to be elicited by the question propounded were not relevant to the issue and if proven could not have affected the result.

Whether a fact sought to be proven would, if proved, in itself, establish a sufficient reason for the truth of a judicial proposition by which a party seeks either to maintain his own claim or to defeat the claim of another, goes to the *effect* to be given to the evidence when received and not to its admissibility.

The objection of irrelevancy goes to the admissibility of the evidence.   But as we have shown, the record discloses the fact that not only was this objection not made, but that the sole objection was that the facts sought to be proven by the witness were privileged communications and could not be revealed.   Indeed, the objection came from the witness himself, and if any ground of objection was specifically made by defendant's counsel, it was this ground and then only inferentially.

The Court *a qua* was not called on to rule and did not rule on any other objection; hence there is no ruling for us to review, except the ruling on the ground stated.

A long line of decisions have long since settled the rule that a

party objecting to testimony must, at the trial, state the particular grounds on which he resists its introduction. The trial court ought not to and.an appellate court will not look for objections other than those specifically made and appearing of record, unless, of course, they are such which positive law or a rule of public policy, requires to be noticed ex propria motu. Hen Dig Verbo Evidence V (6) Nos. 1, 4, 5, 16, and 16 A. 285; 19 A. 96; 30 A. 1347; 21 A. 635; 20 A. 138.

The objection in the instant case was directed to the right of the witness to testify generally as to the communications made to him, and was not restricted to a particular and specific question. We hold that he may so testify, and accordingly the judgment must be reversed and the cause remanded.

It is, therefore, ordered, adjudged ond decreed that the judgment appealed from be and the same is hereby avoided, set aside and reversed, and that the cause be remanded to the lower court for trial *de novo, and* in accordance with the views herein expressed.

The costs of appeal to be taxed against the appellee, and those of the lower court to await final decision.

June 8, 1908.

Dufour, J., dissents.

### DISSENTING OPINION.

1. Where the appeal is exclusively from a judgment dissolving an attachment, an erroneous ruling in respect to a matter affecting the merits of the cause is not reversible error.
2. Where the excluded testimony, if received, would not affect the result, remanding is useless and improper.

DUFOUR, J. The appeal herein is from a judgment dissolving an attachment; the testimony excluded by the trial judge ap pertains solely to the merits. If received, it could not affect the issue before us; hence it is useless to remand the cause.

I think the judgment appealed from should be affirmed, and, therefore, respectfully dissent.

June 8, 1908.